In the Matter of NATHAN H. DELAVAN, an Incompetent Person.

County Court, Onondaga County, December 16, 1966.

*Smith, Sovik, Terry, Kendrick, McAuliffe & Schwarzer* (*Laurence F. Sovik* of counsel), for petitioner. *John D. Bryant* for co-committee of the person and for committee of the property.

ALBERT ORENSTEIN, J. This is an application for approval of a loan from the estate of the incompetent in the amount of approximately $7,000, which sum is to cover approximately one half of the down payment plus closing expenses on the purchase of a house in Skaneateles, New York, as a residence for the petitioner, the wife of the incompetent, and the incompetent.

The purchase price of the house is $45,000. Petitioner proposes to contribute approximately $5,600 of her own funds

towards the down payment. The Skaneateles Savings Bank will not approve a mortgage loan for the balance of the purchase price, $33,750, unless the committee of the property of the incompetent guarantees payment of principal, interest, taxes and insurance premiums on said loan.

Petitioner is co-committee of the person of her husband, Nathan H. Delavan, the incompetent herein, with her son, Byron Delavan, and was duly designated as such committe by an order of this court dated September 25, 1965; by the same order the Marine Midland Trust Company of Central New York was designated as committee of the property of said incompetent.

The petitioner sets forth that the present residence now occupied by her and the incompetent is damp, and detrimental to the health of the incompetent. It is presently rented at $250 a month, with additional utilities in excess of $50 per month. The present apartment has only two bedrooms, one of which is occupied by the incompetent, and the other by the incompetent's nurse. The proposed residence would provide additional accommodations for petitioner, the incompetent, and the incompetent's nurse who resides with them.

Petitioner argues that after the down payment, no appreciable increase in the living expenses would be incurred.

The committee of the property of the incompetent, by its trust officer, opposes the invasion of the incompetent's estate for the purposes sought by petitioner. They claim that such an invasion would be an improvident depletion of the funds of the incompetent.

For approximately two years prior to its appointment as committee of the property, the bank, under power of attorney, administered the affairs of Nathan H. Delavan.

In November, 1962, the Delavans sold their house in Auburn, New York, and moved to the Towers Apartments in Syracuse, New York. In November, 1963, they moved from the Towers Apartments to the present apartment in Skaneateles. The bank asserts that for each of these moves thousands of dollars were expended for improvements, redecoration, and furnishings, and that by reason of its experience with petitioner, the present proposal would involve additional substantial expenses in excess to the amount suggested in the petition.

The committee of the property also shows that as of October 13, 1966, the assets of the incompetent were approximately $307,000, compared with the total of $385,463 found by the jury at the incompetency hearing in September, 1965. The substantial decrease in value is due in part to the stock market decline

in 1966 and in part from the excess of expenditures over income for the care and living expenses of the petitioner and the incompetent.

In an affidavit submitted by the attorney for Byron H. Delavan, co-committee of the person of the incompetent, in opposition to petitioner's petition, the itemized costs of medical, nursing and living expenses for the petitioner and the incompetent are set forth. Analysis indicates that the total annual expenses are $41,086 and that the income from the incompetent's assets amounts to $14,634, leaving a deficit of $26,452, which is met by invasion of the incompetent's assets. This deponent estimates that at the current rate of expenditure, the assets of the incompetent would be entirely expended in less than nine years, and in less than eight years if the $7,000 towards the purchase of the house was withdrawn.

The affidavit of the son of petitioner, co-committee of the incompetent's person, also opposes this loan. He points out that with the purchase of the new home, the monthly expenses would increase by approximately $150 per month. He also sets forth the large sums of money wasted by petitioner in moving from Auburn to Syracuse, and then to Skaneateles, with thousands of dollars of carpeting, furnishings and redecorating left behind and discarded. He further states that if an unhealthy condition is shown to exist, living quarters for his mother and father could be found without decreasing the value of his father's assets and at the same time affording them suitable living conditions to their needs. He asserts that another move would mean considerably more expenses than those set forth in the petition.

Section 106 of the Mental Hygiene Law provides that a committee, either of the property or person, is subject to the direction and control of the appointing court. The committee has no power to act with respect to the incompetent's property, without court approval, except for expenditures for necessaries, preserving the property of the incompetent and making and disposing of "legal" investments.

It has long been the law of New York that the duties of committees are to be discharged with their own determination of the proper course of conduct. Generally, in the absence of special circumstances, the committee must employ its own judgment. An order of the court is generally not necessary to authorize expenditures which *do not* impair the capital of the ward. (*Matter of Hagedorn,* 176 Misc. 233.)

Expenditures for the maintenance of an incompetent are within the function of the committee of the property where they

are not of an extraordinary nature. (*Matter of Stratos,* 21 Misc 2d 283.)

It has been shown to the court that the care and living expenses of the incompetent and petitioner are approximately $41,000 as compared to income of $14,600, resulting in the annual invasion of about $26,400. Under the circumstances presented here, the proposed expenditures are of an extraordinary nature and could not be made within the committee's discretion, but only with the approval of this court.

If an interested party is dissatisfied with the refusal of the committee of the property to make a proposed expenditure, the matter can be taken to the court for review. (*Matter of Tobin* v. *Security Trust Co.,* 21 A D 2d 743 [4th Dept., 1964], affd. 16 N Y 2d 910.)

In view of all of the facts and circumstances presented, this court will not override the judgment of the committee of the property opposing the loan as a wasteful and improvident invasion of the assets of the incompetent. This court is satisfied that other quarters suitable for petitioner and the incompetent could be obtained within the means of the petitioner and without further depleting the incompetent's estate. For the foregoing reasons, the petition is denied.